QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro *(pro hac vice to be filed)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7364
Fax: (212) 849-7100
Email: alexspiro@quinnemanuel.com

Derek L. Shaffer (CA Bar No. 212746)
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8123
Fax: (202) 538-8100
Email: derekshaffer@quinnemanuel.com

Kyle K. Batter (CA Bar No. 301803)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100
Email: kylebatter@quinnemanuel.com

*Attorneys for Plaintiff Tesla, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESLA, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ALAMEDA COUNTY, CALIFORNIA; <br><br> Defendant. | Case Number: 4:20-cv-03186 <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

## NATURE OF THE ACTION

1. As COVID-19 loomed, local officials scrambled to implement myriad measures protecting the Californians in their jurisdictions. The State stepped in to ensure California's response was clear, uniform, and coordinated using state-wide regulations. On some issues, that meant establishing baseline policies, and on others, it meant choosing *the* policy across the state.

2. The Governor's March 20, 2020 stay-at-home order sought to balance the need to protect Californians from infection against the need to maintain Californians' access to vital supplies and services. In so doing, the Governor chose *the* policy on one issue: businesses classified by the federal government as "critical infrastructure" are essential to Californians and are allowed to continue operating as part of California's coordinated response to COVID-19.

3. The Order was clear on this point: "I order that Californians working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being." This purpose was to "establish consistency" and that "the supply chain must continue, and Californians must have access to such necessities as food, prescriptions, and health care." This was not a state-level baseline inviting county innovation above and beyond a minimum; this is an order that certain essential businesses shall be permitted to remain open statewide to provide essential goods and services to all Californians.

4. Nevertheless, Alameda County decided that—notwithstanding the clear language and statewide logic of the Governor's order on this point—it would insist that its prior (and subsequent) conflicting pronouncements controlled over the state-wide order. Alameda County thus arrogated to itself the power to force *closure* of businesses that the state government had ordered could remain *open* because they are federally-defined "critical infrastructure" serving vital security, safety, or economic needs of Californians.

5. Inexplicably, Alameda County proceeded to direct its shutdown at Tesla, even as Alameda County has simultaneously maintained and publicized a FAQ that expressly describes essential businesses in terms that encompass Tesla's Fremont Facility:[1]

> **My business installs distributed solar, storage, and/or electric vehicle charging systems – can it continue to operate?**
>
> Yes, this is permissible construction activity and must comply with the Construction Project Safety Protocols in Appendix B of the Order. **Businesses may also operate to manufacture distributed energy resource components**, like solar panels.

6. What is more, the County has asserted that violations of its orders carry criminal penalties, even though it lacks statutory or other legal authority to do so. Thus, Alameda County has not only created a legal quagmire by wrongly declaring that its own orders trump the state-level orders, it has threatened jail time and significant fines for businesses and individuals that do not comply, even where they are clearly authorized by the State Order to continue critical infrastructure activities.

7. To be clear, Alameda County is not using the "existing authority of local health officers" to supplement a baseline set by the State, issuing policies "more restrictive than" or "in addition to" that baseline, as referenced in a May 4, 2020 Order. The County is making rules that directly contradict and undermine the policy announced by the Governor in his Orders.

8. Alameda County's power-grab not only defies the Governor's Order, but offends the federal and California constitutions. *First*, the County's order violates the Due Process Clause of the Fourteenth Amendment because it fails to give reasonable notice to persons of ordinary intelligence of what is forbidden under the law. By prohibiting what the Governor's Order expressly permits, the County's Order puts businesses deemed critical to the nation's wellbeing by the federal and state governments between a rock and a hard place—unable to discern what the applicable law permits, under threat of criminal prosecution. This is precisely the dilemma the Due Process Clause's requirement of fair notice seeks to avoid, particularly

---

[1] https://covid-19.acgov.org/index.page.

where, as here, there is no procedure for Plaintiff even to challenge the County's determination that it is not an essential business that may continue operations under the County's Order.

9. ***Second***, the County's Order discriminates against identically situated parties without any rational basis and thereby violates the Fourteenth Amendment's Equal Protection Clause. Even as at least one neighboring county is allowing car manufacturing to resume, Alameda County continues to insist—in violation of the Governor's Order and against reason—that what is permitted in a neighboring county will endanger the public health if permitted to also occur within Alameda County borders. Furthermore, even as Alameda County itself declares businesses like Tesla essential, it somehow simultaneously insists, without rational explanation, that Tesla is to remain shut down

10. ***Third***, a county may only "make and enforce within its limits . . . ordinances and regulations not in conflict with general laws." Calif. Const., art. XI, § 7. By purporting to override an express order of the Governor of California, Alameda County has far exceeded its ambit under the California Constitution. In sum, the County's Orders threaten not only to close businesses supplying critical infrastructure, thereby violating multiple federal and state constitutional principles, but also to jail people pursuant to criminal statutes that simply do not apply here. To that extent, the County's Orders should be declared void and without legal effect.

## THE PARTIES

11. Plaintiff Tesla, Inc., is a corporation organized under the laws of Delaware, with its principal place of business in California.

12. Defendant Alameda County, California, is a local government entity organized under the Constitution and laws of the State of California.

## JURISDICTION AND VENUE

13. The Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331 (federal question) because this action involves interpretation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the U.S.

Constitution (U.S. Const. amend. XIV) and because the action seeks to prevent Defendants from interfering with federal rights.

14. Jurisdiction is also appropriate in this Court pursuant to 28 U.S.C. § 1343(a)(3)–(4) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege, or immunity secured by the Constitution, and to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

15. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a) because Plaintiff's state claim is so related to its federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

16. Venue is properly vested in this Court pursuant to 28 U.S.C. § 1391 because all defendants reside in this district and most of the conduct that underlies this action occurred in the Northern District of California.

17. There is a present and actual controversy between the parties.

18. The relief requested is authorized pursuant to 28 U.S.C. §§ 2201 and 2202 (declaratory judgment), 28 U.S.C. § 1651(a) (injunctive relief), and 42 U.S.C. § 1988 (right to costs, including attorneys' fees).

## SUBSTANTIVE ALLEGATIONS

**I.    THE GOVERNOR'S STAY-AT-HOME ORDER**

19. On March 4, 2020, California Governor Gavin Newsom declared a state of emergency to exist in California in light of the COVID-19 pandemic.

20. Subsequently, on March 19, 2020, Governor Newsom signed Executive Order N-33-20 (the "**Governor's Order**").  The Governor's Order directs all residents "to immediately heed the current State public health directives," including an order of the state public health officer reprinted in the Governor's Order.

21. The Governor's Order "order[ed] all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sector as outlined at https://www.cisa.gov/identifying-

1  critical-infrastructure-during-covid-19." The Governor's Order further explained that "[t]he federal government has identified 16 critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof." Governor Newsom therefore "order[ed] that Californians working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being."

22. As noted above, the Governor's Order linked to a federal website identifying the "16 critical infrastructure sectors."[2] Three of those sixteen sectors are relevant to this litigation: (i) "Transportation Equipment Manufacturing," which includes "Vehicles and Commercial Ships Manufacturing"; (ii) "Electrical Equipment, Appliance, and Component Manufacturing," which includes "Electric Motor Manufacturing"; and (iii) the "Energy Sector." Governor Newsom also reserved the authority to "designate additional sectors as critical in order to protect the health and well-being of all Californians."

23. The Governor's Order explained that it sought "to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19."

24. The State of California created a "Frequently asked questions" regarding the Governor's Order. One question asks, "How does this order interact with local orders to shelter in place? Does it supersede them?," to which the State responded, "This is a statewide order." Another asks whether an individual who "run[s]/work[s] at an exempted business" must "get an official letter of authorization from the state to operate," to which the State responded, "No."

---

[2] *Identifying Critical Infrastructure During Covid-19*, Cybsersecurity & Infrastructure Security Agency, https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19 (last revised Apr. 28, 2020).

The State went on to clarify that a "business or organization . . . in the list of exempt sectors . . . may still operate" without "any specific authorization from the state to do so."[3]

## II. THE ALAMEDA COUNTY ORDERS

25. Shortly before Governor Newsom issued his state-wide order, on March 16, 2020, the Interim Health Officer of Alameda County, Dr. Pan, issued a shelter-in-place order ("**First County Order**"). In bold text, beneath the date, the First County Order warned that "[v]iolation of or failure to comply with this Order is a misdemeanor punishable by fine, imprisonment, or both." Under the First County Order, "[a]ll businesses with a facility in the County, except Essential Businesses . . . are required to cease all activities at facilities located within the County except Minimum Basic Operations."  By contrast, "Essential Businesses [we]re strongly encouraged to remain open." The First County Order listed 21 different "Essential Businesses," including "Essential Infrastructure," but did not reference or incorporate the list of "16 critical infrastructure sectors" that the Governor's Order would incorporate three days later. Finally, the First County Order "request[ed] that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order."

26. After the Governor's Order was issued, Dr. Pan issued a second shelter-in-place order superseding the First County Order ("**Second County Order**"). Like the First County Order, the Second County Order conspicuously warned that "[v]iolation of or failure to comply with this Order is a misdemeanor punishable by fine, imprisonment, or both," and listed the criminal statutes that, as discussed herein, simply do not apply. Although largely similar to the list of "Essential Business" in the First County Order, the Second County Order added six categories of "Essential Businesses." Specifically, it added certain types of construction, "[b]icycle repair and supply shops," various real estate professionals, and various types of landscaping professionals, among others. Again, the Second County Order did not reference or

---

[3] *Stay Home Order: Frequently Asked Questions*, California Coronavirus (COVID-19) Response, https://covid19.ca.gov/stay-home-except-for-essential-needs/ (last visited May 6, 2020).

incorporate the list of "16 critical infrastructure sectors," which the Governor's Order by then had ordered may remain open.

27.  The Second County Order referenced the Governor's Order, characterizing it as "set[ting] baseline statewide restrictions on non-residential business activities." The Second County Order purported to "adopt[] in certain respects more stringent restrictions addressing the particular facts and circumstances in this County." According to the Second County Order, "Where a conflict exists between this Order and any state public health order related to the COVID-19 pandemic, the most restrictive provision controls." In support of that assertion, the Second County Order cited only one statute: "California Health and Safety Code section 131080." California Health and Safety Code § 131080, however, does not allow a County Health Officer to override a statewide order. Instead, it simply provides: "The [California D]epartment [of Public Health] may advise all local health authorities, and, when in its judgment the public health is menaced, it shall control and regulate their action."

28.  Finally, on April 29, 2020, Dr. Pan issued a third shelter-in-place order ("**Third County Order**"). "[I]n light of the progress achieved in slowing the spread of COVID-19 in the County of Alameda," the Third County Order "allow[ed] a limited number of additional Essential Business to resume operating." The Third County Order largely reiterated the assertions in the Second County Order regarding Alameda County's authority to adopt "more stringent restrictions," but it added for the first time: "[T]o the extent any federal guidelines allow activities that are not allowed by this Order, this Order controls and those activities are not allowed." Again, the Third County Order did not reference or incorporate the list of "16 critical infrastructure sectors" that the Governor's Order had already ordered may remain open.

29.  Although the County interprets its Third Order to mean otherwise, the County's COVID-19 "Frequently Asked Questions" ostensibly authorizes both battery and electric vehicle manufacturing companies to operate. The relevant text provides:

> **My business installs distributed solar, storage, and/or electric vehicle charging systems – can it continue to operate?**

Yes, this is permissible construction activity and must comply with the Construction Project Safety Protocols in Appendix B of the Order. **Businesses may also operate to manufacture distributed energy resource components**, like solar panels.[4]

30.  Critically, this allowance for the "manufacture [of] distributed energy resource components" encompasses substantially all of Tesla's manufacturing activities in Fremont. As defined by the Public Utility Commission (the state agency solely charged with regulating distributed energy), "distributed energy resource technology" includes both electric vehicles and batteries: "For purposes of this section, 'distributed resources' means distributed renewable generation resources, energy efficiency, energy storage, electric vehicles, and demand response technologies." PUC § 769(a); see also, e.g., *In the Matter of the Application of Pac. Gas & Elec. Co. for Approval of Its Elec. Vehicle Infrastructure & Educ. Program* (U39e)., No. 15-02-009, 2017 WL 1743098 (Apr. 27, 2017) (explaining that the definition of "'distributed resources' includes EVs).

31.  Through its own guidance, Alameda County has expressly recognized and publicized that "businesses may . . . operate to manufacture" batteries and electric vehicles. Inexplicably, however, the Third Order as well as County officials have simultaneously insisted that Tesla must remain shuttered, thereby further compounding the ambiguity, confusion and irrationality surrounding Alameda County's position as to whether Tesla may resume manufacturing activities at its Fremont Factory and elsewhere in the County.

32.  Further, while the County has issued all three of its Orders under threat of criminal punishment, citing Health and Safety Code Section 120295 and Penal Code Sections 148(a)(1) and 69, none of those statutes have any relevance here. Section 120295 makes it a crime to violate "Section 120130 or any section in Chapter 3." Of the cited provisions, however, only a handful impose obligations on individual citizens, as opposed to health officials, and only where a health officer orders either "quarantine" or "isolation," neither of which is applicable here. The former applies only to persons known to have been "exposed to a communicable

---

[4] https://covid-19.acgov.org/index.page.

disease" and the latter only to "infected persons." To the contrary, Plaintiff's workers would be those without known exposure or infection. Penal Code Section 148 only applies to a person willfully resisting, delaying, or obstructing a public official. If Penal Code Section 148 were to make merely going to work a crime, that would re-write those Health and Safety Code sections that carefully made some violations criminally enforceable and others not. Further, such an interpretation would expand criminality to a myriad of other rules and regulations where the legislature chose to impose civil penalties only: noncompliance with any civil law that a public official is charged with enforcing would now become criminal in nature. The only other criminal statute cited by the County is Penal Code Section 69, but that applies only to deterring or resisting a public official from performing his or her duties by means of threats, force, or violence.

### III.   THE GOVERNOR'S REOPENING ORDER

33.   On May 4, 2020, Governor Newsom issued Executive Order N-60-20 concerning the second and third stages of California's "four-stage framework . . . to allow Californians to gradually resume various activities" ("**The Governor's Reopening Order**"). The Governor's Reopening Order directed the State Public Health Officer to "establish criteria and procedures . . . to determine whether and how particular local jurisdictions may implement public health measures that depart from the statewide directives," specifically "measures less restrictive than any public health measures implemented on a statewide basis."

34.   The Governor's Reopening Order also states that it should not be "construed to limit the *existing authority* of local health officers" to adopt "more restrictive" or "addition[al]" measures" (emphasis added). Under existing law, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws*." Cal. Const. art. XI, § 7 (emphasis added). And when, as here, the Governor exercises the State's "police power" during a state of emergency, the Governor's "orders and regulations shall have the force and effect of law." Cal. Gov't Code §§ 8567, 8627. Accordingly, the Governor's Reopening Order only allows counties to act within their "existing

authority"—that is, to adopt measures that are consistent with the Governor's orders or that address matters on which the Governor's orders are silent. But it does not, and cannot be read to, allow a county to override an express permission in the Governor's Order to continue to the operations of federal critical infrastructure businesses.

### IV. TESLA'S FREMONT FACILITY

35. Plaintiff operates a factory in Fremont, California (the "**Tesla Factory**"), which is in Alameda County.

36. After the First County Order was issued, Plaintiff continued to operate the Tesla Factory in the good-faith belief that it was exempt from the shelter-in-place order since its operations clearly fell within multiple federally declared critical infrastructure sectors. At the same time, Plaintiff encouraged any employees who felt sick or uncomfortable coming to work to stay at home.

37. Subsequently, on March 17, 2020, Defendant Sheriff Ahern announced on Twitter that Plaintiff was "not an essential business as defined in the Alameda County Health Order" and could therefore only "maintain minimum basic operations."[5]

38. Plaintiff nevertheless continued to operate its plant in accordance with the federal and state governments' guidance. The Tesla Factory and other facilities in Alameda County manufacture electric cars, electric motors, and energy storage products. Tesla's Alameda County operations thus encompass three of the federal critical infrastructure sectors: (i) "Transportation Equipment Manufacturing," which includes "Vehicles and Commercial Ships Manufacturing"; (ii) "Electrical Equipment, Appliance, and Component Manufacturing," which includes "Electric Motor Manufacturing"; and (iii) the "Energy Sector." Plaintiff therefore continued to operate the Tesla Factory to maintain the supply of critical federal infrastructure.

39. Following that announcement, Plaintiff negotiated with Defendants in a good-faith effort to reach a mutually agreeable resolution. Although Plaintiff believed it had the right

---

[5] Alameda County Sheriff (@ASCOSheriffs), Twitter (Mar. 17, 2020, 7:49 PM), https://twitter.com/acsosheriffs/status/1240062681635123201?s=21.

to continue operating, on March 19, 2020, Plaintiff decided to stop operations at the Tesla Factory at the end of the day on March 23, 2020.

40. Although the Governor's Order expressly permits the operation of the Tesla Factory, Plaintiff has attempted in good faith to negotiate a settlement with Alameda County to allow its plant to reopen and begin producing critical federal infrastructure. Nevertheless, Defendants continue to take the position that the Tesla Factory is not an "Essential Business" under the Third County Order and therefore may not reopen, regardless of the express permission to do so in the Governor's Order.

## CLAIMS FOR RELIEF

### COUNT I:

### DEPRIVATION OF LIBERTY AND PROPERTY IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE

41. Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

42. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." A State "violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).

43. Because the Third County Order directly contradicts the Governor's Order, it fails to provide sufficient notice of which actions will potentially subject Plaintiff to the criminal penalties it incorrectly seeks to apply. Specifically, although the Governor's Order allows all businesses operating in federal critical infrastructure to continue operating, the Third County Order purports to restrict the operation of many of these businesses. It would therefore be unclear, at best, to any person of ordinary intelligence what the Governor's Order and the Third County Order collectively prohibit and allow.

44. In addition, the Third County Order would purport to impose criminal liability on Plaintiff and its employees should they simply follow the Governor's directive that they "may continue their work because of [its] . . . importance to Californians' health and well-being." Yet, as alleged above, none of the statutory provisions cited in the County Order actually authorizes the imposition of criminal sanctions in these circumstances, leaving critical infrastructure businesses and their employees uncertain as to whether they may nonetheless be wrongfully prosecuted or, indeed, exactly what conduct is proscribed.

45. Because the Third County Order also contradicts Alameda County' own substantive guidance, in its FAQ, indicating that businesses like Tesla's in fact qualify as essential, no reader of ordinary intelligence could reasonably ascertain that continuation of such business might constitute a criminal offense.

46. In addition, Alameda County has violated the Due Process Clause insomuch as it fails to provide any meaningful procedure for challenging its determination that a business is non-essential, either pre or post deprivation of Tesla's constitutional right to use of its property. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432-33 (1982). Instead, the County simply announced by Tweet that Tesla's operations were not essential, without any formal process.

47. Plaintiff respectfully seeks a declaration that the Third County Order violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

### COUNT II:
### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

48. Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

49. When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being 'treated alike, under like circumstances and conditions.'" *Engquist v. Ore. Dep't of Agr.*, 553 U.S. 591, 602 (2008).

50. Yet, Tesla is permitted, and continues, to operate its factory and other facilities in neighboring San Joaquin County. There is no rational basis for this disparate treatment of two neighboring Tesla facilities both operating in federal critical infrastructure sectors, and the Order does not attempt to offer one. Indeed, many of Tesla's employees at its Fremont factory reside in San Joaquin County. Nor does any substantial difference in the COVID-19 infection rate justify this disparity: San Joaquin County has experienced an infection rate of 79.3 cases per 100,000 people and a death rate of 3.7 deaths per 100,000 people as of May 7, 2020, which is substantially similar to the infection rate of 114.6 per 100,000 people and death rate of 4.2 per 100,000 people as of the same date in neighboring Alameda County.[6] This disparate treatment is arbitrary and without a rational basis.

51. What is more, the County has required Tesla to shutter despite announcing its substantive position, spelled out in its own FAQ, that businesses manufacturing the products Tesla manufactures should and may remain open. By shuttering Tesla in contradiction of its own publicly-stated rationale and definition for reopening specified businesses, Alameda County is acting irrationally and trying to shutter Tesla in *sui generis* fashion irreconcilable with Alameda County's own avowed policy.

52. Plaintiff respectfully seeks a declaration that the Third County Order violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

## COUNT III:

## PREEMPTION

53. Plaintiffs incorporate by reference and re-allege each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

54. Under article XI, section 7 of the California Constitution, "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Under this provision, a "State Law is in conflict with or

---

[6] *See California Coronavirus Map and Case Count*, N.Y. Times, https://nyti.ms/2X0DtZd (last updated May 7, 2020).

preempts local law if the local law duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1280 (9th Cir. 2017) (internal quotations omitted).

55. Further, section 131080 of the California Health and Safety Code provides, "The [California D]epartment [of Public Health] may advise all local health authorities, and, when in its judgment the public health is menaced, it shall control and regulate their action."

56. Moreover, California law vests the Governor with substantial additional authority to control the response to state-wide emergencies. Section 8627 of the California Government Code provides, "During a state of emergency the Governor shall, to the extent he deems necessary, have complete authority over all agencies of the state government and the right to exercise within the area designated all police power vested in the state by the Constitution and laws of the State of California in order to effectuate the purposes of this chapter. In exercise thereof, he shall promulgate, issue, and enforce such orders and regulations as he deems necessary, in accordance with the provisions of Section 8567." Under section 8567(a) of the Government Code, the Governor's "orders and regulations shall have the force and effect of law."

57. The Governor's Order incorporates an order of the State Public Health Officer and Director of the California Department of Public Health which expressly "order[s] that Californians working in the[] 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being."

58. The Tesla Factory manufactures electric cars, electric motors, and storage devices. The Tesla Factory therefore operates in three of the federal critical infrastructure sectors: (i) "Transportation Equipment Manufacturing," which includes "Vehicles and Commercial Ships Manufacturing"; (ii) "Electrical Equipment, Appliance, and Component Manufacturing," which includes "Electric Motor Manufacturing"; and (iii) the "Energy Sector." Under the Governor's Order, Plaintiff is expressly allowed to continue operations at the Tesla Factory.

59. The Third County Order nevertheless contradicts the Governor's Order and purports to restrict the conduct of businesses operating in the federal critical infrastructure sectors. In addition, because Plaintiff does not qualify as an "Essential Business" under the Third County Order, the Third County Order purports to prohibit Plaintiff from operating its Fremont Factory. The Third County Order therefore directly contradicts the Governor's Order to the extent it restricts the operation of business operating in the federal critical infrastructure sectors.

60. Plaintiff respectfully seeks a declaration that to the extent the Third County Order contradicts the Governor's Order by purporting to foreclose Tesla from operating as federal critical infrastructure, it violates article XI, section 7 of the California Constitution, and section 131080 of the California Health and Safety Code, and thus is void and unenforceable.

## PRAYER FOR RELIEF

In light of the foregoing, Plaintiff respectfully prays that this Court:

A. Issue a permanent injunction enjoining enforcement of the Third County Order against Plaintiff;

B. Issue a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, that the Third County Order violates the Due Process Clause as applied to Plaintiff because it fails to provide fair notice of what the law requires;

C. Issue a declaratory judgment, pursuant to 28 U.S.C. § 2201, California Constitution, art. XI, § 7, and California Health and Safety Code § 131080, that the Third County Order is void to the extent it is inconsistent with the provisions of the Governor's Order expressly allowing the continued operation of the federal critical infrastructure sectors;

D. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

E. Award such other relief available under the law that may be considered appropriate under the circumstances, including other fees and costs of this action to the extent allowed by the law.

Dated: May 9, 2020

/s/ Alex Spiro
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro *(pro hac vice to be filed)*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7364
Email: alexspiro@quinnemanuel.com

Derek L. Shaffer (Bar No. 212746)
1300 I Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 538-8123
Email: derekshaffer@quinnemanuel.com

Kyle K. Batter (Bar No. 301803)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Email: kylebatter@quinnemanuel.com

*Attorneys for Plaintiff*

**ATTESTATION**

I, Kyle K. Batter, am the ECF User whose ID and password are being used to file this Complaint for Injunctive and Declaratory Relief.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Alex Spiro has concurred in this filing.

DATED: May 9, 2020          QUINN EMANUEL URQUHART & SULLIVAN, LLP

/s/ Kyle Batter

Kyle Batter